BAYLEY MANUFACTURING COMPANY, Appellant, vs. BOWERS and another, Respondents.

*May 9—October 10, 1922.*

*Sales: Warranty: Article according to specifications: Gratuitous attempts to improve: Book account: Interest.*

1. Where a motor-driven fan had the maximum capacity called for by the buyer's specifications, the fact that it would not permit the operation of three boilers, the size of which was not stated in the specifications, did not establish a breach of warranty, since the sellers were justified in assuming that the

engineer who had prepared the specifications had figured that a fan of the maximum capacity stated would operate the three boilers.

2. Unsuccessful gratuitous attempts by the seller to remedy the fan so as to develop the required capacity could not subject him to liability, which must be predicated on the original agreement.

3. A book account draws interest from the date of demand of payment, and, in the absence of a previous demand, from the commencement of the action thereon.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Reversed.*

This action was brought by appellant to recover the amount of an open account against respondents. They counterclaimed for damages resulting from an alleged breach of warranty concerning the efficiency and capacity of a certain motor-driven fan furnished them by appellant to be used in connection with a heating plant which they were installing in a government institution. The principal issues presented grow out of the counterclaim.

It appears that on or about the 1st day of July, 1914, respondents were preparing a bid in response to prescribed specifications for the installation of four 100 horse-power boilers and accessories to be installed by the federal government at the naval hospital located at Las Animas, Colorado. The specifications called for four 100 horse-power boilers, with settings, fan and motor, additional steel flue, heat insulation, piping, valves, fittings, gaskets, bolts, gauges, thermometers and injectors, and all necessary foundations and concrete flooring. The request for bids contained minute specifications for each and all of such specified equipment. The specification for the fan, so far as material here, was as follows:

"20. *Fan.* (A type.) A motor-driven fan to increase the draft available from the present 100-foot chimney shall be furnished and installed approximate as shown on the

plans.   The fan may be either the steel plate or multi-blade exhauster type, with full housing, and shall be liberal in design, and economical, reliable, and efficient in opera-tion.

"B. *Size and capacity.*   The fan with the stack shall have a maximum capacity sufficient to permit the burning of enough 'Swatiska' coal to permit the simultaneous opera-tion of at least three of the boilers at 200 per cent. rating, and shall be capable of delivering to the base of the stack when operated at normal capacity the products of combus-tion from the three boilers operating at normal load.   It shall have a maximum capacity of at least 20,000 cubic feet of gases per minute, and when operated as stated above with flue gases at approximately 600 degrees F. and the out-side air approximately 80 degrees F., the maximum avail-able draft due to the fan and measured in the furnace of the boiler farthest from the stack shall be at least 0.65 inch of water pressure.

"C. *Guaranties.*   The proposal shall state and guarantee for the equipment offered, the following operating, char-acteristics:

"I. The efficiency of the fan when operating at normal capacity.

"II. The horse-power required by the fan when operat-ing at normal capacity.

"III. The pressure in inches of water induced by the fan when operating as specified.

"IV. That the fan will operate satisfactorily under the condition specified with the gases at a temperature not ex-ceeding 800 degrees F.

"V. The weight of the fan and motor in place."

Respondents furnished appellant with a copy of the speci-fications for the fan to enable it to quote a figure at which it would furnish the same.   Under date of July 8, 1914, ap-pellant quoted a price of $538 and guaranteed that the fan would comply with the specifications which were submitted with the inquiry.   The respondents were awarded the con-tract by the government, and under date of October 13, 1914, placed their order with appellant for the fan.   The fan was duly furnished and installed, and upon a test failed

to develop "the simultaneous operation of at least three of the boilers at 200 per cent. rating." When advised of the result of the test appellant freely conceded that the fan was not of sufficient capacity for that purpose, and admitted that it had not been designed to accomplish any such result.

Appellant took the position that the specifications called for a fan having "a maximum capacity of at least 20,000 cubic feet of gases per minute," and claimed that the fan furnished had such capacity. It was not disputed on the part of respondents that the fan had a maximum capacity of at least 20,000 cubic feet of gases per minute, and appellant conceded that the fan was not of sufficient capacity to permit the simultaneous operation of at least three of the boilers at 200 per cent. rating.

The question raised, therefore, involved a construction of the specifications, which is really a question of law. The trial court held that appellant warranted the fan to be of sufficient capacity to develop a simultaneous operation of at least three of the boilers at 200 per cent. rating; that there was a breach of such warranty; and assessed respondents' damages by reason of such breach at the sum of $4,349.84, and rendered judgment in favor of respondents and against appellant for the sum of $2,625.26, being the difference between the book account sued upon and the damages awarded for the breach. From the judgment so entered appellant brings this appeal.

For the appellant there was a brief by *H. H. Karrow,* attorney, and *McMahon, McMahon & Hayes,* of counsel, all of Milwaukee, and oral argument by *Stephen J. McMahon.*

*Edward W. Spencer* of Milwaukee, for the respondents.

The following opinion was filed June 6, 1922:

OWEN, J. It is conceded that at no time prior to the delivery of the fan was appellant's attention called to the fact that it was to be used in connection with the operation

of four 100 horse-power boilers.   There is no dispute on the part of the experts testifying in the case that the capacity of the fan is to be measured by the number of cubic feet of gases per minute which it can handle; that the size of a fan required to permit the simultaneous operation of at least three of the boilers at 200 per cent. rating is an engineering problem, and that in order to design a fan to accomplish such result it is necessary to know the size of the boilers.   Appellant contends that because the specifications for the fan were silent with respect to the size of the boilers, but did require a maximum capacity of at least 20,000 cubic feet of gases per minute, it was justified in assuming that the engineer who prepared the specifications had figured out the necessary capacity of the fan to be 20,000 cubic feet of gases per minute.   We see no escape from this conclusion.   There is nothing from which an intent on the part of respondents that appellant should solve the engineering problem of the required capacity of a fan necessary to produce the simultaneous operation of at least three of the boilers at 200 per cent. rating can be inferred.   To solve this problem without any knowledge concerning the size of the boilers is an engineering impossibility.   Appellant, it seems, was entirely warranted in believing that the engineer preparing the specifications had figured that a fan having a maximum capacity of at least 20,000 cubic feet of gases per minute was of sufficient capacity to permit the simultaneous operation of at least three of the boilers at 200 per cent. rating, and that it was no part of its duty to figure on the capacity of the fan required.

It being conceded that the fan had a maximum capacity of at least 20,000 cubic feet of gases per minute, it complied with the warranty and there is no basis for respondents' counterclaim.   It is true that appellant attempted to remedy the fan so as to develop the required capacity, which attempt was also a failure.   Its efforts in this behalf, however, were gratuitous and can form no basis for liability.   The liability,

if any, must be predicated upon the original agreement and warranty.

Appellant also complains because the trial court did not allow interest on the book account from the date of the last entry. The brief contains a statement that it is fundamental that a book account draws interest from the date of the last entry. Such is not our understanding of the law. A book account draws interest only from the date of demand of payment, and in this case there was no proof of a demand prior to the commencement of the action. Interest, therefore, can be allowed only from that time. *Marsh v. Fraser*, 37 Wis. 149.

*By the Court.*—Judgment reversed, and cause remanded with instructions to dismiss the counterclaim and render judgment in favor of the plaintiff for the amount of the book account with interest thereon from the date of the commencement of the action.

A motion for a rehearing was denied, with $25 costs, on October 10, 1922.